*608 OPINION OF THE COURT
William J. Giacomo, J.
The facts of this case are not in dispute. On October 15, 2005, the decedent Erin Stolarski, depressed over a breakup with her boyfriend, attempted suicide by ingesting 22 pills of various types of medications. Erin was then admitted to Greenwich Hospital. According to the Greenwich Hospital records, Erin presented with depression due to the breakup with her boyfriend and suffered from depression, suicidal thoughts, and suicidal ideation. The hospital records also indicate that Erin told a hospital employee that she could harm herself again and that she had been depressed for the past two weeks.
As part of her discharge plan, on October 19, 2005, Erin met with a member of defendant Family Services of Westchester, Inc. (FSW), telling the social worker that she “cannot live without [her boyfriend].” The social worker noted that Erin was in a “depressed mood” and had a “tearful affect.” On October 26, 2005, Erin again met with an FSW social worker. The social worker’s records indicate that Erin’s separation from her boyfriend “continues to trigger depressed mood and feelings of hopelessness.”
Tragically, on October 28, 2005, Erin returned to the apartment she had shared with her boyfriend, accessed his firearm and took her own life by shooting herself in the temple.
Plaintiffs, Erin’s parents, bring this wrongful death action seeking recovery for the pain and suffering Erin experienced between the time she was released from Greenwich Hospital after her first suicide attempt and the time Erin took her own life approximately two weeks later. Plaintiffs argue that Erin’s death was caused by defendant Family Services of Westchester, Inc.’s failure to properly treat Erin.
FSW now moves via a motion in limine to dismiss the complaint on the ground that it fails to state a cause of action. FSW argues that the damages plaintiffs seek to recover for pain and suffering are not recoverable under New York law. Plaintiffs disagree.
The court has received and reviewed briefs with regard to the issues raised and, after oral argument before the court, the court decides the motion to dismiss the complaint for failure to state a cause of action as follows.
Timing of FSW’s Motion to Dismiss
*609 At the outset, the court notes that during oral argument, plaintiffs argued that this motion should not be entertained because it was brought on the eve of trial.
Contrary to plaintiffs’ contentions, CPLR 3211 (e) provides that a motion to dismiss pursuant to CPLR 3211 (a) (7), failure to state a cause of action, “may be made at any subsequent time or in a later pleading, if one is permitted.” Therefore, FSW’s motion is properly made.
Failure to State a Cause of Action
In a wrongful death action, the plaintiffs have the threshold burden of proving that decedent was conscious and in pain for at least some period of time following the incident which caused her death in order to justify an award of damages for pain and suffering. (See Cummins v County of Onondaga, 84 NY2d 322 [1994].) Here, plaintiffs concede that they are not seeking damages for the pain and suffering experienced by Erin from the time she shot herself until her actual death because there is undisputed evidence that Erin’s death was instantaneous.
Rather, plaintiffs claim that they are entitled to damages for Erin’s pain and suffering caused by the alleged fact that she did not receive proper psychological evaluation and treatment from FSW. Thus, they seek recovery for Erin’s pain and suffering before she took her own life. The pain and suffering which plaintiffs claim Erin suffered during this period was depression, a feeling of hopelessness, and suicidal thoughts.
In support of this argument plaintiffs rely on several cases in which plaintiffs have been permitted to recover for pain and suffering experienced by decedents prior to their death, the type of pain and suffering which has been termed “preimpact terror” (Lang v Bouju, 245 AD2d 1000 [3d Dept 1997]). However, this case is readily distinguishable from the “preimpact terror” cases. For example, in Lang v Bouju (supra), decedent was driving a motorcycle and came into contact, head on, with a truck stopped in decedent’s lane of traffic. The Third Department found that it was appropriate for plaintiff to recover for pain and suffering due to the likelihood that decedent, upon seeing the truck and applying his brakes, was “aware of the likelihood — and ultimately the certainty — of a serious collision, during the approximately five seconds preceding impact.” (Id. at 1001.) Likewise, in Donofrio v Montalbano (240 AD2d 617 [2d Dept 1997]), another case relied upon by plaintiffs, decedent was the passenger in a car driven by defendant which struck a tree. The plaintiffs were permitted to recover for the very brief *610 period of time decedent could have experienced preimpact terror as he observed the vehicle in which he was a passenger move at a speed of 70-75 miles per hour towards the tree.
In both Lang and Donofrio, the decedent’s death was directly and undisputedly caused by the action of another party, in each case the defendant. Tragically, here Erin took her own life.
The last case relied upon by plaintiffs is DeLong v County of Erie (89 AD2d 376 [4th Dept 1982]). While the facts of DeLong are different from Lang and Donofrio, DeLong also does not support plaintiffs’ claim for pain and suffering. In DeLong, decedent called 911 when she encountered a burglar trying to enter her home. The 911 operator failed to get decedent’s name and exact address, but assured her the police would arrive “right away.” Due to a misidentification of decedent’s address, the police never responded to the call and the 911 operator took no further action. The call was treated as a fake. Decedent lived a half of a block from the police precinct. About 13 minutes later, decedent was seen running from her home covered in blood and bleeding profusely from seven knife wounds which ultimately caused her death. Notably, when the local police were notified by the neighbors of the attack upon decedent, they arrived in less than 60 seconds. Upon a subsequent search of the house, the police found evidence of a “savage attack.”
The Appellate Division, Fourth Department, held that it was appropriate for the jury to consider “the terror [decedent] must have experienced during her ultimate struggle to save herself and her child from a murderous assailant.” (Id. at 385.)
In each of these cases, the decedent died as a result of the direct undisputed actions of another party tortfeasor. That is not the case here.
Plaintiffs argue that FSW’s failure to properly treat Erin caused and/or exacerbated her depression and the feeling of hopelessness and, therefore, in essence, directly caused Erin to take her own life. Indeed, plaintiffs claim that FSW’s actions or inactions amount to, in essence, the actual “pulling of the trigger” of the firearm which caused Erin’s death.
However, that position is belied by the fact that Erin’s first attempt to take her own life on October 15, 2005 was caused by the end of her relationship with her boyfriend. Notably, the Greenwich Hospital records indicate that Erin’s continued depression and suicidal thoughts were caused by the breakup with her boyfriend, not by FSW When Erin presented to FSW *611 she was already suffering depression, hopelessness and suicidal thoughts. FSW did not create those thoughts in Erin. Notably, during the two visits Erin had with the FSW social worker she indicated that her continuing depression and hopelessness was caused by the breakup of her relationship with her boyfriend. There is simply no evidence that FSW caused Erin’s depression, hopelessness and suicidal thoughts which tragically resulted in her taking her own life.
In further opposition to FSW’s motion, plaintiffs argue that to dismiss this action would allow a defendant who kidnapped “a girl and locks her in the basement for 5 months” to avoid a claim for pain and suffering if that girl ultimately kills herself. What plaintiffs miss in this hypothetical is that this hypothetical defendant caused the situation which resulted in the suicide. Here, Erin’s depression, hopelessness and suicidal thoughts were directly caused by the breakup with her boyfriend, not by FSW.
While the court has great sympathy for plaintiffs and understands their need to make sense of their daughter’s unbearably tragic death, the damages they seek to recover in this action are not permitted under New York law.
Accordingly, FSW’s motion to dismiss the complaint for failure to state a cause of action is granted. However, such motion is granted only to the extent of dismissing the cause of action which seeks pain and suffering damages. To the extent that plaintiffs seek pecuniary damages such claim is not dismissed.